IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **HITCHCOCK INDEPENDENT SCHOOL DISTRICT (HISD)** | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO: 3:20-CV-125 |
| **ARTHUR J. GALLAGHER & CO.,** *et al.*, | § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, HITCHCOCK INDEPENDENT SCHOOL DISTRICT ("Plaintiff"), and files this *Plaintiff's First Amended Complaint*, complaining of Defendants ARTHUR J. GALLAGHER & CO., ARTHUR J. GALLAGHER SERVICES COMPANY, LLC and CRC INSURANCE SERVICES, INC., ("Defendants"), and for cause of action, Plaintiff would respectfully show this Honorable Court the following:

### PARTIES

1. Plaintiff is an independent school district organized and operating under the laws of Texas and operates public schools in Galveston County, Texas.

2. Defendant, ARTHUR J. GALLAGHER & CO. is a foreign for-profit corporation operating in the State of Texas. The Defendant has been served with process by serving its registered agent, Prentice Hall Corp. System at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.  Defendant, ARTHUR J. GALLAGHER SERVICE COMPANY, LLC, is a foreign limited liablity company operating in the State of Texas. The Defendant has been served with process by serving its registered agent, Corporation Service Company d/b/a CSC Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

4.  Defendant, CRC INSURANCE SERVICES, INC., is a foreign for-profit corporation operating in the State of Texas. The Defendant has been served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

5.  The Court has jurisdiction over this cause of action because the amount in controversy is within the jurisdictional limits of the Court and the parties are diverse.

6.  Venue is proper in this Court because the insured property at issue is situated in this county and the events giving rise to this lawsuit occurred in this county.

## FACTS

7.  Plaintiff is the owner of the following insurance policies identified as:

| POLICY NUMBER | INSURANCE COMPANY |
|---|---|
| 10T029659020831601 | General Security Indemnity Co. |
| 7DA3CM000203002 | Princeton Excess & Surplus Ins. Co. |
| AMP752579002 | Indian Harbor Insurance Co. |
| AMR3921902 | Certain Underwriters, Lloyd's London |
| CPP101325802 | Steadfast Insurance Company |
| HAN1206502 | Intl. Insurance Co of Hannover, SE |
| LEX01470969000 | Lexington Insurance Company |
| MSP1790802 | QBE Specialty Insurance Company |
| USI1206202 | United Specialty Insurance Company |

hereinafter referred to as "the Policies." *See* **EXHIBIT A** – Insurance Declaration Page and Endorsements (88 pages)[1].

---

[1] With the exception of any emails, which were recently retrieved, all documents contained in these Exhibits were produced to Defendants prior to suit being filed.

8. The Policies were issued by the above referenced respective insurance companies.

9. ARTHUR J. GALLAGHER & CO. and ARTHUR J. GALLAGHER SERVICE COMPANY, LLC, served as brokers in the procurement of the above-referenced Policies for the Plaintiff. *See* **EXHIBIT B** – Tolling and Standstill Agreement; s*ee also* **EXHIBIT C** – Insurance Proposal.

10. "Victory Insurance" and its representatives merged with and became Defendant Arthur J. Gallagher & Co. just days after invoicing Plaintiff for procuring the Policies at issue here. *See* **EXHIBIT B** *and* **EXHIBIT D** – Correspondence from Victory Insurance dated September 16, 2016.

11. Under Texas law, Defendants, regardless of their self-proclaimed role as "broker," also served as insuring "agents" in the procurement of the above-referenced Policies, as they collected the premium and shared in the commission paid by Plaintiff. *See Continental Cas Co. v. Bock,* 340 W.W2d 527 (Tex. 1960), *and see* **EXHIBIT E –** Invoice from Victory Insurance.

12. CRC INSURANCE SERVICES, INC., served as the producer for the above referenced Policies for the Plaintiff.

13. Plaintiff owns multiple insured properties under the Policies, all of which are located in Galveston County, Texas (hereinafter the "Properties").

14. On or about August 30, 2017, a storm struck Galveston County, Texas, causing severe damage to homes and businesses throughout the area.

15. The Properties sustained extensive wind and/or flood damage during the storm. Additionally, water intrusion through the walls caused significant damage throughout the interior of the structure. *See* **EXHIBIT F** – Hurricane Harvey Damage Estimates.

16. Plaintiff submitted a claim against the Policies for damages the Properties sustained as a result of the storm. Upon information and belief, the respective insurance companies assigned numbers 4142048 AND 4149077 for the claim. Plaintiff asked that that insurnace companies cover the cost of repairs to the Properties pursuant to the Policies. *See* **EXHIBIT G** – Correspondence from Insurers, which reflects claim and claim numbers**.**

17. The insurance companies inspected the Properties and dramatically underestimated the damages. After deductible and depreciation, they issued a check in the amount of $0.00. The insurance companies on multiple occasions failed to properly inspect the Properties and failed to properly scope the loss by intentionally ignoring areas of damage and turning a blind eye to the true extent of the loss. *See* **EXHIBIT F** and, *see also* **EXHIBIT H** – Insurers' VeriClaim Report.

18. Plaintiff submitted a pre-suit demand letter to the insurance companies. *See* **EXHIBIT I** – Correspondence from Plaintiff's Counsel dated January 9, 2019.

19. The insurance companies failed to attempt to resolve the dispute under the Policies. The insurance companies committed multiple violations of the Texas Insurance Code under Chapter 541 and 542 and failed to act in good faith in resolving the claim.

20. Plaintiff filed suit against the insurance companies under the Policies. Plaintiff at that time learned that the Policies contained a provision that required any dispute be submitted to binding arbitration. Furthermore, the arbitration was to occur in New York and New York law was to apply to the dispute. In addition, the Policies contained a highly unusual and biased qualification and experience requirement concerning who would qualify as an arbitrator under the Policies. *See* **EXHIBIT A**.

21. The insurance policies covering Plaintiff for the previous years, from which Plaintiff requested renew information from the Defendants for the 2016-2017 term encompassing Hurricane Harvey, *did not* contain these onerous and punitive dispute clauses.

22. The Defendants knowingly failed to disclose the burdensome and onerous arbitration provisions and choice of law clause to the Plaintiff. There were no communications between Gallagher and HISD regarding arbitration provisions, choice of law provisions, or forum selection clauses. *See* **EXHBIT J** – Various communications between Plaintiff and Defendants regarding renewal of insurance in 2016.

23. The Plaintiff relied on the expertise and experience of the Defendants to assist in selecting a suitable insurance policy and one that would provide the customary protections and dispute resolution procedures normally found in Texas policies. *See* **EXHIBIT K** – Various written claims made by Gallagher, both to the public and directly to HISD (additional testimony will be provided regarding oral representations).

24. In the event that the Plaintiff was not satisfied with the adjustment of an insurance claim, the Plaintiff fully anticipated being able to utilize Texas law and the Texas judicial system to ensure a fair, prompt and equitable adjustment of their claim in accordance with the laws of the great State of Texas and the duty of good faith and fair dealing as well as general due process rights.

25. In contrast, New York law differs from Texas Law in several ways. Most significantly, attorney's fees are not available and the threshold requirements for punitive damages are significantly more stringent. New York law does not allow for trebled damages. Under Texas law, the Plaintiff could recover $14,349,512 plus attorney fees, costs and interest. Under New York law, the maximum Plaintiff could recover is $3,587,378.

26. HISD is, by Texas standards, a very small, rural school district with absolutely no connection to the State of New York. Forced travel to, and accommodations in, New York for resolution of any dispute would be prohibitively expensive and logistically impossible, effectively preventing HISD from asserting its rights or maintaining any bargaining power. Forcing venue in New York created an unreasonable cost burden to the Plaintiff.

27. The arbitration provision also shifted the potential cost of the arbitration to whomever the arbitrators ordered would pay. The cost of arbitration would certainly be much higher than compared to litigation and made any arbitration proceeding potentially cost prohibitive to the Plaintiff.

28. Plaintiff ultimately resolved the dispute with the insurance companies under the Policies, however, because of the extremely restrictive and unfair provisions contained within the Policies, the Plaintiff sustained substantial harm and the settlement with the insurance companies under the Policies constituted a very small fraction of the damages suffered by the Plaintiff. Clearly if the Plaintiff had the right to bring its claims under Texas law in a court of competent jurisdiction in Galveston County, Texas, the outcome of the case would have been dramatically different.

29. The provisions contained within the Policies deprived the Plaintiff of the civil process, procedure and law normally found in first party insurance claims in Texas. The Plaintiff was deprived of the benefits of the Texas Insurance Code as well as the strong consumer protection laws in Texas which govern insurance claim handling practices.

30. The provisions also stripped the Plaintiff of the right to have a jury trial in Galveston County, Texas, and ensured that any arbitration would be conducted some 1,800 miles away from the facts and parties involved in the case. It is unreasonable burdensome and patently unfair to have an arbitration occurring in New York, applying New York law, to determine what damages

should be paid to address hurricane damage to a Galveston County school district. School children in Texas would have the fate of their leaky classrooms determined by arbitrators sitting in New York with little or no connection to the loss or the State of Texas.

31. The insurance companies set about to deny and underpay on properly covered damages. As a result of the unreasonable investigation of the claim, including not providing full coverage for the damages sustained by Plaintiff, as well as under-scoping the damages during its investigation and thus denying adequate and sufficient payment to Plaintiff to repair their Properties, Plaintiff was left with no adequate way to dispute the loss because they were wrongfully deprived of all Texas laws governing insurance claims and bad faith adjustments.

32. The Defendants misrepresented to the Plaintiff the nature, quality, and coverage(s) afforded under the Policies. The Defendants misrepresented and knowingly provided false and fraudulent information concerning the coverages under the Policies and the endorsements, exclusions and provisions of the Policies.

## CAUSES OF ACTION
## (AS TO ALL DEFENDANTS)

33. Defendants are liable to Plaintiff for negligence and breach of fiduciary duty, as well as intentional violations of the Texas Insurance Code and Deceptive Trade Practices Act in addition to common law fraud and negligent and/or intentional misrepresentation.

### First Cause of Action – Common Law Negligence

34. Plaintiff re-alleges and incorporates each allegation contained in above paragraphs of this Petition as if fully set forth herein.

35. An insured is entitled to recover damages it incurs as a result of an insurance broker's negligence. *See Gulf-Tex Brokerage v. McDade & Assoc.*, 433 F. Supp. 1015 (S.D. Tex. 1977)

36. The Defendants owed the Plaintiff a legal duty. At least one Court in Texas has held that an insurance agent owes a client "the greatest possible duty," including to keep its clients fully informed. *Frank B. Hall & Co. v. Beach, Inc.,* 733 S.W. 2d 251, 261 (Tex.App—Corpus Christi 1987, writ ref'd n.r.e.); *see also, McNeill v. McDavid Ins. Agency*, 594 S.W.2d 198 (Tex. App—Fort Worth 1980) *and Continental Casualty Co. v. Bock,* 340 S.W.2d 527 (Tex.Civ.App.—Houston 1960). The Texas Supreme Court, in *May v. United Services Assoc. of Amer.,* did not express any view on the but, rather, concluded there was no breach.

37. Furthermore, when an insurance agent voluntarily undertakes to perform certain duties for a client, they create duties that otherwise may not exist under Texas law. Defendants voluntarily and eagerly undertook to perform certain duties for Plaintiff, as described herein.

38. The Defendants were negligent in their duties, voluntarily and self-defined or legally imposed, to secure insurance on behalf of Plaintiff.

39. The Defendants, through their negligence and inaction, breached their duty to the Plaintiff.

40. Defendants breach of duty has caused the Plaintiff to suffer injury and damages.

## Second Cause of Action – Breach of Fiduciary Duty

41. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs of this Petition as if fully set forth herein.

42. Texas Courts have concluded a fiduciary duty exists between agent and insured and, therefore, the duty can be breached.

43. This Court has previously accepted a potential fiduciary duty relationship between an agent and its client. *See Certain Underwriters at Lloyd's London v. A & D Interests, Inc.*, 197 F. Supp. 2d 741, 752 (S.D. Tex. 2002).

44. Defendants created a fiduciary duty between agent and insured by their statements and their actions.

45. Defendants breached that duty. Plaintiff trusted in and relied upon Defendants expertise in selecting appropriate insurance coverage and completing the required documentation. Plaintiff provided all required documentation to Defendant who failed to follow through with the required task of procuring appropriate insurance coverage with standardized and generally accepted policy terms and conditions.

46. Defendants breach of their fiduciary duty has caused damages to the Plaintiff, including financial and emotional hardship in the rebuilding process.

### Third Cause of Action - Deceptive Trade Practices

47. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs of this Petition as if fully set forth herein.

48. Plaintiff would show that Defendants engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive TRade Practices - Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein.

49. Several Texas courts, including this one, have routinely found that insurance agents are potentially liable under the Insurance Code. *See Clark v. State Farm Lloyds,* 2001 WL 1516762, at *2 (N.D. Tex. Nov. 26, 2001), *Jones v. Ace Am. Ins. Co*., 2006 WL 3826998, at *7 (E.D. Tex. Dec. 22, 2006), and *Vargas v. State Farm Lloyds*, 216 F. Supp. 2d 643 (S.D. Tex. 2002).

50. <u>Unconscionable Action or Course of Action</u>. Defendants engaged in an "unconscionable action or course of action" to the detriment of Plaintiff as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree.

51. <u>Unfair and Deceptive Acts or Practices</u>. Defendants also engaged in unfair and deceptive acts or practices prohibited by Subchapter B, Chapter 541, Texas Insurance Code, to wit:

(a) making, publishing, disseminating, circulating, or placing before the public or directly or indirectly causing to be made, published, disseminated, circulated, or placed before the public in a newspaper, magazine, or other publication, or in the form of a notice, circular, pamphlet, letter, or poster, or over any radio or television station, or in any other manner an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business.

> <u>Producing Cause</u>. Plaintiff would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiff's damages more fully described herein below.
>
> <u>Reliance</u>. Plaintiff would further show the acts, practices and/or omissions complained of under Chapter 541 of the Texas Insurance Code were relied upon by Plaintiff to Plaintiff's detriment.

52. The Defendants took advantage of the Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree and to the Plaintiff's detriment. As a result of the Defendants violations of the DTPA, Plaintiff suffered actual damages. In addition, the Defendants committed the above acts knowingly and/or intentionally, entitling Plaintiff to three times Plaintiff's damages for economic relief.

**Fourth Cause of Action - Common Law Fraud**

53. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs of this Petition as if fully set forth herein.

54. Defendants are liable to Plaintiff for common law fraud. *See Shandee Corp. v. Kemper Group*, 880 S.W.2d 409, 413 (Tex. App.—Houston [14th Dist.] 1994, writ denied), allowing claim for common law fraud.

55. A broker has a greater duty to a client than just a regular insurance agent. Defendants were acting as a broker by their own admission to evaluate different policies, insurance companies, and coverages, and then to make the best recommendation to the Plaintiff.

56. Gallagher, through its representative James E. Monts, made numerous misrepresentations about coverages and policy recommendations. These misrepresentations occurred indirectly, on their website via advertising and brochures, and directly by Mr. Monts to the Plaintiff by email, oral conversations, and at the July 26, 2016, HISD Board Meeting. *See* **Exhibits J** and **K.**

57. Each and every one of the representations, as described herein, concerned material facts for the reason that absent such representations, Plaintiff would not have acted as he did, and which Defendants knew were false or made recklessly without any knowledge of their truth as a positive assertion.

58. The statements were made with the intention that they should be acted upon by Plaintiff, who in turn acted in reliance upon the statements, thereby causing Plaintiff to suffer injury and constituting common law fraud.

59. The Defendants knowingly or recklessly made false representations as to material facts and/or knowingly concealed all or part of material information from Plaintiff with the intent of inducing Plaintiff to purchase the Policies in question.

60. The Defendants allowed Plaintiff to use this information, or lack thereof, in justifiable reliance in accepting and purchasing the Policies.

61. Plaintiff relied upon said misstatements and misrepresentations in accepting and purchasing the Policies, and suffered injury as a result thereof.

### Fifth Cause of Action - Breach of Contract

62. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs of this Petition as if fully set forth herein.

63. Plaintiff and Defendants entered into an agreement whereby the Defendants would solicit, procure, evaluate, and select appropriate insurance policies for the Plaintiff. In exchange Plaintiff would utilize the Defendants to act as their insurance broker and producer and the Defendants would be compensated for such services. *See* **EXHIBITS J** and **K**.

64. Defendants received compensation of $25,464.52 from Plaintiff. *See* **EXHIBIT J.**

65. Plaintiff did not receive the benefit of the bargain, as asserted by the facts stated herein.

66. Defendants conduct constitutes a breach of the agreement made between them and the Plaintiff.

67. Defendants' failure to procure appropriate insurance coverage, and their actions to conceal and misrepresent the coverages of the insurance Policies, constitutes a breach of Defendants' agreement with Plaintiff.

68. The Defendants breach proximately caused Plaintiff's injuries and damages.

69. All conditions precedent required under the agreement have been performed, excused, waived, or otherwise satisfied by the Plaintiff.

### Sixth Cause of Action – Negligent or Intentional Misrepresentation

70. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs of this Petition as if fully set forth herein.

71. Defendants supplied false information to Plaintiff, including but not limited to, failing to disclose the punitive dispute resolution processes implemented by the insurers.

72. Defendant did so for the guidance of the Plaintiff insured.

73. Defendants did so in the course of its regular business and as part of a transaction in which it had a pecuniary interest.

74. Plaintiff justifiable relied on the information.

75. Defendants failed to exercise reasonable care or competence in obtaining and/or communicating said information.

76. This Court has recognized actionable common law tort claims based on an insurance agent's negligent misrepresentation, *See KIW, Inc. v. Zurich Am. Ins. Co.*, CIV.A. H-05-3240, 2005 WL 3434977 (S.D. Tex. Dec. 14, 2005).

77. Defendants negligent misrepresentation has caused damages to the Plaintiff, including financial and emotional hardship in the rebuilding process.

## DAMAGES

78. Upon the trial of this case, it shall be shown Plaintiff sustained damages as a result of Defendants conduct. Plaintiff respectfully requests the Court and jury award the amount of loss Plaintiff has incurred in the past and will incur in the future.

79. There are certain elements of damages to be considered separately and individually for the purpose of determining the sum of money that would fairly and reasonably compensate Plaintiff for injuries, damages, and losses, incurred and to be incurred. From the date of the occurrence in question until the time of trial of this cause, Plaintiff seeks every element of damage allowed by Texas law with respect to the causes of action mentioned above, including but not limited to Plaintiff's actual damages, Policies benefits, pre-judgment interest, post-judgment interest,

consequential damages, court costs, attorneys' fees, treble damages, statutory interest, and exemplary damages.

80. Plaintiff would show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

81. The damages caused by the hailstorm and/or windstorm have not been properly addressed or repaired in the months since the storm, causing further damages to the Properties, and causing undue hardship and burden to Plaintiff. These damages are a direct result of Defendants mishandling of the procurement of Plaintiff's insurance Policies in violation of the laws set forth above.

82. For breach of contract, Plaintiff is entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorney's fees and pre-judgment interest.

83. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policies, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff ask for three times their actual damages. Tex. Ins. Code §541.152.

84. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the claim amount, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

85. For breach of the common law duty of good faith and fair dealing, Plaintiff entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

86. For violations of the Deceptive Trade Practices Act, Plaintiff is entitled to recover actual damages and up to three times Plaintiff' damages for economic relief, along with attorney's fees, interest and court costs.

87. For fraud, Plaintiff is entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

88. For the prosecution and collection of this claim, Plaintiff have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

89. Therefore, *at minimum*, Plaintiff is entitled to recover for the actual damages to the property as outlined on the first page of **EXHIBIT F**, totaling $3,587,378 plus exemplary damages under Texas law, bringing the total to $14,349,512; plus, attorney's fees, interest, and costs.

## JURY DEMAND

90. Plaintiff request a jury trial, and has previously tendered any and all requisite fees for such along with the filing of its *Plaintiff's Original Petition*.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that final judgment be rendered for the Plaintiff as follows:

1) Judgment against Defendants for actual damages in an amount to be determined by the jury;

2) Statutory benefits;

3) Treble damages;

4) Exemplary and punitive damages;

5) Pre-judgment interest as provided by law;

6) Post-judgment interest as provided by law;

7) Attorneys' fees;

8) Costs of suit;

9) Such other and further relief to which Plaintiff may be justly entitled.

          Respectfully submitted,

          **HODGE LAW FIRM, PLLC**

          Shaun W. Hodge
          HODGE LAW FIRM, PLLC
          State Bar No. 24052995
          Old Galveston Square
          2211 The Strand, Suite 302
          Galveston, Texas 77550
          Telephone: (409) 762-5000
          Facsimile: (409) 763-2300
          Email: shodge@hodgefirm.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on this, the 12th day of May, 2020, the undersigned attorney electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case files system of the court, and served a true and correct copy of the foregoing document upon all counsel of record electronically using the electronic case files system of this court:

Murray Fogler
Attorney in Charge
mfogler@fbfog.com
Jas Brar
jbrar@fbfog.com
Fogler, Brar, O'Neil & Gray LLP
909 Fannin Street, Suite 1640
Houston, Texas 77010
Tel: 713.481.1010
Fax: 713.574.3224

Scott A. Shanes
shaness@clarkhill.com
Anna K. Olin
aolin@clarkhill.com
Clark Hill Strasburger
2600 Dallas Parkway, Suite 600
Frisco, TX 75034
(469) 287-3900 – Telephone

_____
Shaun W. Hodge

PLAINTIFF'S FIRST AMENDED COMPLAINT                                   CAUSE NO. 3:20-CV-125
                                                                      PAGE 17