United States District Court
Southern District of Texas
**ENTERED**
February 26, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HITCHCOCK INDEPENDENT SCHOOL DISTRICT, | § § § § § | |
| Plaintiff. | | |
| VS. | § § | CIVIL ACTION NO. 3:20-CV-00125 |
| ARTHUR J. GALLAGHER & CO., ET AL., | § § § § § | |
| Defendants. | | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendants' Motion to Dismiss. *See* Dkt. 13. Having reviewed the briefing, the live complaint, and the applicable law, I **RECOMMEND** that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

The allegations that follow are set forth in Plaintiff's First Amended Complaint and told in the light most favorable to Plaintiff, Hitchcock Independent School District ("HISD"). HISD is a public school district located on the mainland just a few miles north of the causeway crossing West Galveston Bay. HISD owns several properties scattered throughout Galveston County, and it obtained insurance for those properties with the help of its insurance broker, Arthur J. Gallagher & Co. and Arthur J. Gallagher Service Company, LLC (collectively, "Gallagher"). When Hurricane Harvey struck the Texas coast in August 2017, HISD's properties suffered approximately $3.5 million in property damage. After

the insurers refused to pay HISD's property damage claim, the school district filed suit against the insurers in federal court. During the litigation HISD discovered that the underlying policies contained an arbitration clause and a New York choice of law provision. Rather than pursue its claims against the insurers in arbitration, HISD settled its claims against the insurers for an undisclosed amount. HISD then turned around and sued Gallagher for failing to obtain insurance without the arbitration and choice of law provisions.

According to HISD, Gallagher "knowingly failed to disclose the burdensome and onerous arbitration provisions and choice of law clause[s] to [HISD]"; "misrepresented to [HISD] the nature, quality, and coverage(s) afforded under the Policies"; and "knowingly provided false and fraudulent information concerning the coverages under the Policies and the endorsements, exclusions[,] and provisions of the Policies." Dkt. 10 at 5, 7. The First Amended Complaint alleges six causes of action against Gallagher: (1) common law negligence; (2) breach of fiduciary duty; (3) violation of the Texas Deceptive Trade Practices Act ("DTPA"); (4) common law fraud; (5) breach of contract; and (6) negligent or intentional misrepresentation. HISD seeks more than $14 million in actual and punitive damages, plus an undetermined amount of attorney's fees, interest, and costs. Gallagher has moved to dismiss HISD's claims.

## SUBJECT MATTER JURISDICTION

Article III, Section 2, of the Constitution limits the jurisdiction of federal courts to "Cases" or "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

559 (1992). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Determining whether the plaintiff has standing to sue should be decided "before all other issues because it determines the court's fundamental power even to hear the suit." *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quotation omitted). If the plaintiff has no standing, the case should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits." *Domain Protection, LLC v. Sea Wasp, LLC*, No. 4:18-cv-792, 2019 WL 5189200, at *3 (E.D. Tex. Oct. 15, 2019).

To satisfy the constitutional standing requirement, plaintiffs must show: "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (quotation omitted). The Supreme Court has "made it clear time and time again that an injury in fact must be both concrete *and* particularized." *Spokeo v. Robins*, 136 S. Ct. 1540, 1548 (2016). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way," while a "concrete injury must be de facto; that is, it must actually exist." *Id.* (citations omitted). It is well settled in this jurisdiction that a "claim of injury generally is too

3

conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court." *Little*, 575 F.3d at 540. *See also Howington v. United States*, No. 3:17-cv-149, 2018 WL 6651783, at *2 (S.D. Tex. Mar. 5, 2018) (finding plaintiff had no standing to sue the government for whistleblower fees because his injury relied on a speculative series of events, including "the discretion of a court").

HISD has alleged six causes of action and one injury—the inability to "recover $14,349,512 plus attorney fees, costs[,]and interest" from its insurers. Dkt. 10 at 5. HISD alleges that it suffered this injury because Gallagher, acting on HISD's behalf, obtained insurance policies that contained an arbitration clause and a New York choice of law provision. HISD theorizes that absent the arbitration clause and New York choice of law provision, it would have been able to secure a $14 million judgment against the insurers from a Texas jury applying Texas law. This amount includes actual damages, punitive damages, and treble damages reportedly permitted under Texas law. HISD contends these same damages are not allowed under New York law. Boiled down, HISD claims that it had to settle the Hurricane Harvey property damage lawsuit against the insurers for less than what it would have settled had the arbitration and choice of law provisions not been in its policies. *See* Dkt. 10 at 6 ("Clearly if [HISD] had the right to bring its claims under Texas law in a court of competent jurisdiction in Galveston County, Texas, the outcome of the case would have been dramatically different."). The problem

with this novel theory of recovery is that it requires pure speculation—on multiple levels.

Think about the mental gymnastics required for HISD to prevail on its damage theory: If there had been no arbitration provision and no New York choice of law clause, HISD would have prevailed against its insurers in a hypothetical jury trial in the State of Texas; a hypothetical jury would have awarded HISD roughly $14 million in damages; and that judgment would have survived appellate review. HISD also asks the fact-finder to conclude that the insurers would have paid more to settle the property damage claims had the insurance policies not contained an arbitration provision and New York choice of law clause. As Gallagher observes: "Either of these outcomes require HISD to prove what various third parties—*e.g.*, insurers, arbitrator, judge, jury, or appellate court—would have done under hypothetical circumstances. This is plainly not permitted." Dkt. 13 at 17–18. I agree. Would a jury really have been more sympathetic to HISD's claims than an arbitrator? Would Gallagher really have been more willing to settle for a higher amount if the case was pending in a federal courtroom in Texas? Answering these questions requires unadulterated guesswork.

HISD's claims against Gallagher "depend on attenuated chains of causation" and the decisions of parties not before the court. *Howington*, 2018 WL 6651783, at *2. *See also Little*, 575 F.3d at 541 ("The competitors' claim of injury depends on several layers of decisions by third parties . . . and is too speculative to confer Article III standing."). HISD simply "pairs a conclusory assertion of money lost

5

with a request that a defendant pay up," and that is insufficient to demonstrate an injury in fact. *Thorne v. Pep Boys Manny Moe & Jack, Inc.*, 980 F.3d 879, 886 (3d Cir. 2020) (cleaned up). *See also Lujan*, 504 U.S. at 562 ("The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." (cleaned up)).

Because HISD's claims rely entirely on impermissible speculation, HISD does not have standing to pursue this case. HISD's lawsuit should be dismissed.[1] Nonetheless, out of an abundance of caution, I will address the viability of each of HISD's causes of action under Rule 12(b)(6).

## RULE 12(b)(6) MOTION TO DISMISS

To obtain relief from a federal court, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The failure to comply with this pleading requirement can result in an early dismissal of the entire lawsuit for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

---

[1] Apart from standing, causation is an essential element for all of HISD's causes of action. Because HISD's claims are based on conjecture and speculation, HISD cannot establish proximate cause, torpedoing its efforts to properly state a claim for relief under Rule 12(b)(6).

6

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion tests the formal sufficiency of the plaintiff's complaint but should not be used to resolve factual issues or the merits of the case. *See In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (It is the responsibility of the district court at the Rule 12(b)(6) stage to decide "whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.").

On a Rule 12(b)(6) motion, the plaintiff's complaint is viewed in the light most favorable to the plaintiff, and all well-pleaded facts are accepted as true. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

**A.   STATUTE   OF   LIMITATIONS:   NEGLIGENCE,   NEGLIGENT MISREPRESENTATION, AND DTPA VIOLATIONS**

Gallagher argues that HISD failed to bring its claims for negligence, negligent misrepresentation, and violations of the DTPA within the applicable two-year statute of limitations.

The DTPA creates a private cause of action for consumers that have suffered an injury caused by "any unconscionable action or course of action by any person;

or . . . the use or employment by any person of an act or practice in violation of Chapter 541" of the Texas Insurance Code. TEX. BUS. & COM. CODE § 17.50(a)(3)–(4). All claims brought under the DTPA "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or . . . should have discovered the occurrence of the false, misleading, or deceptive act or practice." *Id.* § 17.565. Tort claims, like HISD's negligence and negligent misrepresentation claims, are also subject to a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Gallier v. Woodbury Fin. Servs., Inc.*, 171 F. Supp. 3d 552, 561 (S.D. Tex. 2016).

The parties agree that the limitations period for HISD's claims began to run on August 15, 2016. This means that HISD's DTPA, negligence, and negligent misrepresentation claims were barred as of August 15, 2018, assuming a two-year statute of limitations applies. HISD did not file this lawsuit until March 23, 2020—almost three-and-a-half years after the limitations clock started. HISD makes three arguments as to why its claims are not time-barred: (1) its claims are subject to a four-year limitations period, not a two-year one; (2) its claims against Gallagher were tolled by agreement; and (3) it timely filed against its insurers on May 17, 2019. These arguments have zero merit. I will address them one by one.

First, although a four-year statute of limitations would apply to a breach of contract action brought against HISD's insurers, this is not a suit against HISD's insurers for failing to pay policy benefits. HISD's claims against Gallagher, its

8

insurance broker, are for DTPA violations, negligence, and negligent misrepresentations. These claims are unquestionably subject to a two-year limitations period, not a four-year period.

Second, although it is true that the parties did sign a tolling agreement, that tolling agreement offers HISD no assistance here. The tolling agreement provides that it will "not revive any actions, claims, or defenses that were time-barred before October 10, 2019." Dkt. 10-2 at 2. Because the limitations period for DTPA violations, negligence, and negligent misrepresentation began to run on August 15, 2016, and closed two years later on August 15, 2018, the tolling agreement is of no help to HISD. HISD's DTPA, negligence, and negligent misrepresentation claims were barred as of October 10, 2019, and they remain barred under the tolling agreement's express terms.

Third, HISD's argument that it timely filed suit against its insurers back in May 2019 is completely irrelevant to whether its claims against Gallagher are timely. The "institution of suit against one corporation will not interrupt the running of the limitation period as to a different corporation or entity." *Cont'l S. Lines, Inc. v. Hilland*, 528 S.W.2d 828, 829 (Tex. 1975). Moreover, HISD's lawsuit against the insurers was filed in May 2019, roughly eight months *after* the two-year statute of limitations expired against Gallagher. This argument fails for multiple reasons.

In short, HISD's DTPA, negligence, and negligent misrepresentation claims are unquestionably barred by the statute of limitations. They should be dismissed.

9

**B.     BREACH OF FIDUCIARY DUTY**

HISD alleges that Gallagher owed HISD a fiduciary duty because Gallagher served as HISD's insurance agent and HISD "relied on the expertise and experience of [Gallagher] to assist in selecting a suitable insurance policy." Dkt. 10 at 5. These allegations do not support a breach of fiduciary duty claim.

To put the fiduciary duty claim into context, Texas law views the fiduciary relationship as "an extraordinary one [that] will not be lightly created." *Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 439 (Tex. App—Houston [14th Dist.] 2000, pet. denied). There are two types of fiduciary relationships: (1) a "formal" relationship in which a duty arises as a matter of law (such as attorney-client, principal-agent, trustee-beneficiary, or between partners in a partnership); and (2) an "informal" relationship arising from a moral, social, domestic, or personal relationship called a "confidential" relationship. *See id.*

It is widely recognized that the relationship between an insurance agent and an insured does not give rise to a formal fiduciary duty. *See Lexington Ins. Co. v. N. Am. Interpipe, Inc.*, No. H-08-3589, 2009 WL 1750523, at *2 (S.D. Tex. June 19, 2009); *Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*, 514 F. Supp. 2d 972, 988–89 (S.D. Tex. 2007); *Env't. Procs., Inc. v. Guidry*, 282 S.W.3d 602, 627–28 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). An informal fiduciary relationship "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quotation

10

omitted). To impose an informal fiduciary duty in a business transaction, however, "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998). As Judge Ewing Werlein, Jr. explained:

> The fact that a business relationship has been cordial and of extended duration is not by itself evidence of a confidential relationship. Nor is subjective trust sufficient to transform an arms-length transaction into a fiduciary relationship.

*Lexington*, 2009 WL 1750523, at *2 (quotation omitted).

The First Amended Complaint sets forth bare assertions, and nothing more, that a fiduciary relationship existed between HISD and Gallagher. The fact that Gallagher assisted HISD in procuring insurance in the past is insufficient, by itself, to give rise to a fiduciary relationship. *See id.* There is nothing in the First Amended Complaint to suggest that the Gallagher-HISD relationship was anything more than a routine, arms-length business transaction. Gallagher's motion to dismiss this claim should be granted.

## C. FRAUD AND NEGLIGENT OR INTENTIONAL MISREPRESENTATION

HISD's fourth and sixth causes of action allege that Gallagher engaged in fraudulent conduct and made negligent or intentional misrepresentations to HISD.[2] These claims are all subject to the heightened pleading requirements of

---

[2] For what it is worth, the "'[f]raud' and 'intentional misrepresentation' [claims] are the same cause of action." *Kew v. Bank of Am., N.A.*, No. H-11-2824, 2012 WL 5832354, at *3 (S.D. Tex. Nov. 16, 2012).

11

Federal Rule of Civil Procedure 9(b). *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (Although Rule 9(b) "by its terms does not apply to negligent misrepresentation claims," district courts will apply its "heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims.").

To meet the requirements of Rule 9(b), the allegations must include "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Id.* at 724 (quotation omitted). Failure to comply with Rule 9(b)'s heightened pleading requirement can result in "dismissal for failure to state a claim upon which relief can be granted." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

HISD does not dispute that Rule 9(b) applies to its fraud and negligent misrepresentation claims. Instead, HISD argues that the First Amended Complaint meets this pleading requirement by alleging that Gallagher "fail[ed] to disclose the punitive dispute resolution processes implemented by the insurers." Dkt. 10 at 13. But the "affirmative duty to speak in Texas arises only in a confidential or fiduciary relationship." *Pelletier v. Weyerhaeuser Co.*, No. 6:17-cv-027, 2018 WL 1523693, at *2 (S.D. Tex. Mar. 28, 2018). *See also Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 546 (5th Cir. 2003) ("[M]ere failure to disclose

information is not actionable misrepresentation under Texas law, absent a fiduciary relationship." (quotation omitted)). As discussed above, Gallagher owed no fiduciary duty to HISD, so it had no affirmative duty to disclose the presence of the arbitration clause and choice of law provision. As an aside, HISD could have easily discovered these provisions by simply reading the insurance policy. *See Lewis*, 343 F.3d at 546 ("[A] fraud plaintiff cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." (quotation omitted)). *Aspen*, 514 F. Supp. 2d at 983 ("An insurance agent has no duty to explain an insurance policy's terms, and an insured has a duty to read and be familiar with the terms of his own policy and is bound to them whether he has read them or not.").[3]

Beyond this failure to disclose, the First Amended Complaint fails to identify what HISD asked Gallagher to do, what kind of policy HISD asked Gallagher to procure, what representations Gallagher made, when Gallagher made them, and where Gallagher made them. Seeking to avoid dismissal, HISD argues that "common law fraud may be proved by circumstantial evidence." Dkt. 14 at 25. Although an intent to defraud may be alleged generally, *see Tuchman v. DSC*

---

[3] One of the elements HISD must establish to prevail on each of its six causes of action is justifiable reliance. Because "an insured is deemed to know the contents of his insurance contract" under Texas law, HISD is unable to show that it justifiably relied on any alleged non-disclosure of policy terms. *Morris Cnty. Nat'l Bank v. John Deere Ins. Co.*, 254 F.3d 538, 541 (5th Cir. 2001). This is an independent reason why HISD's claims for affirmative relief fail at the Rule 12(b)(6) stage.

*Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994), HISD must still identify "the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009). HISD fails on all these counts. As a result, HISD's claims for fraud, fraudulent misrepresentation, and intentional misrepresentation are unsustainable.[4] Gallagher's motion to dismiss these claims should be granted.

### D. BREACH OF CONTRACT

Gallagher's fifth cause of action is for breach of contract. To state a claim for breach of contract in Texas, HISD must allege "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Real Est. Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 349 (5th Cir. 2011) (quotation omitted).

HISD has not identified or described the alleged contract in any meaningful way. To begin, it is not clear who the parties to the contract are.[5] There is no

---

[4] HISD's DTPA claim also fails to meet Rule 9(b)'s pleading requirements. *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("It is well-established that claims alleging violations of the DTPA are subject to the requirements of Rule 9(b)." (cleaned up)).

[5] Towards the end of the Motion to Dismiss, Gallagher points out that HISD has sued two different Gallagher entities—Arthur J. Gallagher & Co. and Arthur J. Gallagher Service Company, LLC—but failed to distinguish the acts of misconduct allegedly engaged in by the individual companies. This is classic "group pleading," which the Fifth Circuit has soundly rejected. *See Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). Because I recommend that the Motion to Dismiss be granted on

14

description of the terms of the alleged agreement or the rights and obligations of the parties. HISD's lawsuit also fails to identify any conduct by Gallagher that amounted to a breach of that contract. This failure to "point to a specific provision in [a] contract that was breached by" Gallagher is fatal to HISD's claim, and dismissal is proper for this reason alone. *King v. Wells Fargo Bank, N.A.*, No, 3-11CV-0945-M-BD, 2012 WL 1205163, at *2 (N.D. Tex. March 20, 2012).

In essence, the First Amended Complaint simply claims that there was an agreement that Gallagher would solicit, procure, evaluate, and select appropriate insurance policies; and, Gallagher breached those obligations. These bare-bone allegations fail to provide any substantive explanation as to how Gallagher purportedly breached the contract. This does not suffice under Rule 12(b)(6). *See Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 692 (E.D. Tex. 2009) (dismissing a breach of contract claim under Rule 12(b)(6) because the plaintiff's allegations that a broker failed to procure insurance was factually insufficient to put the defendant on notice of the plaintiff's claim); *Lehman Bros. Holdings, Inc. v. Cornerstone Mortg. Co.*, No. H-09-0672, 2009 WL 2900740, at *5 (S.D. Tex. Aug. 31, 2009) (holding that a counterclaim stating that "Plaintiff breached the contract" failed to meet basic pleading requirements (quotation marks omitted)). Because HISD has failed to allege sufficient facts to raise a right to relief for breach

---

numerous other grounds, I need not determine if HISD's claims should be independently dismissed for failing to meet this basic pleading requirement.

of contract above the speculative level, its breach of contract claim should be dismissed.

## CONCLUSION

For the reasons provided above, I **RECOMMEND** that Defendants' Motion to Dismiss (Dkt. 13) be **GRANTED**, and this case **DISMISSED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 26th day of February 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE